[Crim. No. 7598: First Dist., Div. One. Dec. 16, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JEROME TURNER, Defendant and Appellant.

## Counsel

Jack G. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—Michael Jerome Turner appeals from a judgment entered upon a court finding that he was guilty of violating Penal Code

section 496 (receiving stolen property). The evidence was substantially uncontroverted.

Around 6 p.m. on November 21, 1966, two men, one brandishing a gun, entered an enclosed motor van of the A & B Garment Delivery of Oakland. The vehicle contained tuxedos, suits, jackets and dresses which earlier that day had been picked up at Roos-Atkins, Foreman & Clark, Grodin's and other stores. Under direction of the two men the driver drove to 73d Avenue where he was instructed to stop. There his hands were tied, he was blindfolded and he was left on the front seat of the van. He heard noises which sounded like the unloading of the truck, and then there was silence. The driver kicked open the door and a passerby removed the blindfold and untied his hands. The police were called and the crime was reported.

Going on duty the next evening two highway patrol officers, in their briefing, were told about the robbery of the motor van and the kidnaping of its driver. They were informed that a dark blue panel truck was believed to have been used by the culprits. Around 2 a.m. the next morning they received radio information from the Oakland Police Department that such a blue panel truck containing two or three Negro males was proceeding eastbound on MacArthur Freeway from 98th Avenue. A few moments later the officers observed such a panel truck and saw that it was being driven by a Negro. The rear windows of the vehicle were covered with brown paper. The officers called for a "back up unit."

When the assistance arrived, the panel truck, apparently occupied by two Negroes, was stopped. The officers, one armed with a shotgun, the other with a pistol, ordered the men to get out of the truck with their hands up. The driver was defendant Turner. The officers "asked them the whereabouts of the third person, because there were only two of them." Then while the "back up unit" covered the suspects, one of the officers looked "to see if anyone else was in the truck." He found no one but instead saw stacks of clothing, in plastic containers, piled to the top of the vehicle. Turner and his companion were then arrested. A gun was later found "up behind the front seat" of the truck.

At the trial the van driver identified the clothing generally as being similar to that which was in his vehicle at the time of the robbery. The driver also testified that a cardboard box marked "Foreman & Clark," a clothes hamper stamped "Roos-Atkins" and plastic bags marked "Grodins," all found in the panel truck, were of the same type as those in his van at the time of the robbery. A Foreman & Clark employee identified a carton found in the panel truck as having been delivered to the A & B Garment Delivery driver; a merchandise slip in the carton corresponded with another from the store.

Turner's court-appointed counsel contends that the arrest of Turner and the search of the panel truck which disclosed the stolen clothing did not comply with constitutional standards. It is argued: (1) that the removal of Turner and his companion from the truck and their subsequent restraint by the police constituted an arrest; (2) the arrest was without reasonable or probable cause; and (3) hence the evidence turned up by the ensuing search was inadmissible. For reasons we shall now point out these contentions are without merit.

■ The officers had full knowledge of the robbery of the clothing van, the kidnaping of its driver, and that a blue panel truck was suspected as having been used by the perpetrators. While on patrol they learned through official channels that the suspected vehicle containing *two or three* Negro males were headed their way. They were reasonably and legally entitled to rely on that information. (See *People* v. *Kraps,* 238 Cal.App.2d 675, 679 [48 Cal.Rptr. 89]; *People* v. *Jackson,* 202 Cal.App.2d 569, 574 [21 Cal. Rptr. 44].) A few minutes later the blue panel truck appeared. It became the duty of the officers to investigate even though we assume, arguendo only, no probable cause existed to arrest the vehicle's occupants. (*People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *Bramlette* v. *Superior Court,* 273 Cal.App.2d 799, 805 [78 Cal.Rptr. 532]; *People* v. *Bloom,* 270 Cal.App.2d 731, 734 [76 Cal.Rptr. 137].)

■ It is now established law in this state that in carrying out a proper investigation, police, even without probable cause for an arrest, may stop an automobile and question its occupants. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Mickelson, supra,* 59 Cal.2d 448, 450.) Here the officers observed that the truck was operated by a Negro, thus increasing the probability that it was the vehicle described in the radio message. For the purpose of an investigation they then stopped the truck.

■ It is also firmly established that in carrying out an investigation of crime police may take reasonable steps to protect themselves from violence. It is held in such a case that persons properly under investigation may be *restrained* and obliged to submit to a search for weapons. In such a situation the California Supreme Court in *People* v. *Martin,* 46 Cal.2d 106, 108 [293 P.2d 52], held: "Under these circumstances the officers were justified in taking precautionary measures to assure their own safety on overtaking the suspects, and it was therefore reasonable for them to order the suspects to put their hands in front of them and to get out of the automobile to be searched for weapons before being questioned." Similarly, in *People* v. *Hastings,* 253 Cal.App.2d 191, 193 [61 Cal.Rptr. 275], where probable

cause to arrest a narcotic suspect did not exist, police were nevertheless held justified in "turning" a suspect toward a wall and subjecting him to a "pat-down" search for weapons. (See also *People* v. *Mickleson, supra,* 59 Cal.2d 448, 450; *People* v. *Stephenson,* 268 Cal.App.2d 908, 910 [74 Cal.Rptr. 504]; *People* v. *Dumas,* 251 Cal.App.2d 613, 617 [59 Cal.Rptr. 541], which says "The realities of present day law enforcement dictate that the failure to make such a search, in many cases, might mean death to policemen"; *People* v. *Kraps, supra,* 238 Cal.App.2d 675, 679-680.)

The same rule is now applicable to all of the states by virtue of the Fourteenth Amendment and the holding of *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. In *Terry* a police officer became suspicious of three men whom he suspected of doing a "casing job." He thought they might have a gun and considered it his duty to investigate further. He identified himself to the men as a police officer and when one of the men, Terry, "mumbled something" in response to a question, the officer "spun him around" and searched him for weapons. No constitutional infringement was found. The court stated: "We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives. [¶] In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (392 U.S. at pp. 23-24 [20 L.Ed.2d at pp. 907-908].)

In the case before us the officers had a clear duty to investigate and question the panel truck's occupants who they were told consisted of *two or three* men. There was good reason to believe that the men might have been involved in an armed robbery (Pen. Code, § 211), and kidnaping for the purpose of robbery (Pen. Code, § 209), crimes carrying extremely severe penalties. That the officers considered the risk great is indicated by

their request for a "back up unit." Reasonably, and under *Terry* v. *Ohio, supra,* they were permitted "to neutralize the threat of physical harm." Under cover of police weapons the truck's occupants were ordered out of their vehicle. When only two men emerged the officers were reasonably justified in assuming the possible presence of a *third*. Common sense told the officers, and tells us, that the weapons search and interrogation of Hunter and his companion should be deferred until a search for the possibly armed third person could be made. It was during this search that the evidence of the stolen clothing was disclosed.

█ The right of a police officer to assure his own safety during the course of an investigation is not limited to the disarming of a person immediately before him. He may do anything reasonably necessary "to neutralize the threat of physical harm." █ Here the search for a third person was proper and the discovery of the stolen goods during its course was without Fourth Amendment or other constitutional taint.

We find no merit in the contention that Hunter and his companion were, as a matter of law, *arrested* as they exited from the vehicle. Instead, for investigation, the men were properly detained and restrained temporarily for the purpose of assuring the safety of the officers, as permitted by the authority we have pointed out. The arrests were made after the discovery of the stolen property.

Turner, personally, by permission of the court, has filed a supplementary brief. He contends that there was no substantial evidence that the clothing found in the panel truck was stolen, and further, that the district attorney engaged "in misconduct by offering inadmissible and prejudicial evidence." We have read the record; there was substantial evidence from which the trial court could have inferred that the property was stolen. (See *People* v. *Newland,* 15 Cal.2d 678, 680 [104 P.2d 778].) And we find no misconduct on the part of the district attorney. There is accordingly no merit to these contentions.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.