[Crim. No. 18512. Second Dist., Div. Five. Mar. 29, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL SANDOR LEVY, Defendant and Appellant.

## Counsel

Howard E. Beckler and Dwight E. Stevens for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Douglas B. Noble, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**AISO, J.**—By information, defendant Michael Sandor Levy and his codefendant Patricia Ann Pierson were jointly charged with possession of heroin for sale. (Health & Saf. Code, § 11500.5.) A Penal Code section 1538.5 motion was made on behalf of both defendants and submitted on the transcript of the preliminary hearing. The court denied the motion as to defendant and granted it as to codefendant Patricia Ann Pierson.[1] Defendant Levy did not seek a pretrial review of the ruling denying the motion to suppress as to him and proceeded to trial before a jury, which found him guilty of simple possession of heroin (Health & Saf. Code, § 11500), a lesser and necessarily included offense to that charged. Probation was denied and defendant was sentenced to state prison. He appeals from the judgment contending that the denial of his motion to

---

[1]The People sought a pretrial review of the ruling as to this codefendant by petition for a writ of mandate (Pen. Code, § 1538.5, subd. (o)) to this court. The writ was granted upon the ground of inconsistency and ambiguity. (*People* v. *Superior Court* (1969) 274 Cal.App.2d 228 [78 Cal.Rptr. 830].) Upon remand a new 1538.5 hearing was held upon a new information charging Patricia Ann Pierson and her husband, Robert Pierson, with possession of heroin for sale (Health & Saf. Code, § 11500.5) and possession of restricted drugs for sale (Health & Saf. Code, § 11911) arising from the same episode which gave rise to defendant's arrest and prosecution. The trial court denied the motion made by the Piersons and this court denied their petition for a writ of mandate. (*Pierson* v. *Superior Court* (1970) 8 Cal.App.3d 510 [87 Cal.Rptr. 433].) Prior to the hearing, on the motion to suppress in this latter proceeding, the informant had died and with the necessity of protecting the informant's identity no longer prevailing, the officer attributed statements to her, which he withheld in the instant case, as we shall point out later.

suppress under Penal Code section 1538.5 constituted reversible error. (Pen. Code, § 1538.5, subd. (m).)

Defendant argues that he was physically seized (arrested) by the officers just a few steps outside of the Piersons' front door without a warrant of arrest and without reasonable or probable cause.

## I.

The only witness produced by the People at the preliminary hearing on the probable cause issue was Police Officer Gary Figelski, then assigned to the "Valley Narcotics" Division of the Los Angeles Police Department. His testimony insofar as it pertains to the issue at hand may be briefly summarized as follows:

He received information from a confidential reliable informant that one Bobby Pierson was engaged in selling and possessing heroin and "speed" for purposes of sale. The informant had been at the Piersons' home a week or ten days prior to defendant's arrest, on November 18, 1968, and took the officer to the location pointing it out to him. The informant described Bobby Pierson as a male Caucasian in his twenties, approximately five feet nine or five feet ten in height, and weighing about 165 pounds. The informant further informed the officer that Bobby Pierson drove a green 1955 or 1956 customized Chevrolet, and that he also had a late model black pick-up truck. Bobby Pierson was living at the location with his wife and baby. The wife had blonde hair and apparently was not aware of the illegal activities going on at the location.

The officer further testified that information previously received from the informant had resulted in the arrest of four different individuals and the recovery of narcotics on two separate occasions. On the first occasion, one person was arrested and a quantity of heroin, marijuana, desoxyephedrine (speed), hypodermic needles, and other dangerous drugs, was recovered. Upon the second occasion, the informant's information led to the arrest of three individuals and the recovery of a small quantity of marijuana and a hypodermic kit.

The informant stated to him that "he"[2] had been inside the particular location a week or 10 days prior to the date of defendant's arrest; that "he" had been there one time before that occasion; that Bobby Pierson was involved with another person by the name of George Caputo; and that Pierson "had apparently received some narcotics from Mr. Caputo."

The officer checked the police department records and found that a

---

[2]In this case the officer referred to the informant as "he."

person by the name of Bobby Pierson did have a record. On November 18, 1968, Officer Figelski and his partner, Sergeant Colella, proceeded to the Pierson home. When the officer arrived at the location, he observed a black pick-up truck parked in the driveway and a 1965 or 1966 dark blue or black Chevrolet Nova parked behind it. As he walked towards the front door of the premises, he noticed that there was a female person seated inside this "Chevy II." She[3] asked him, "What do you want here?" He identified himself, telling her that he was a narcotics officer conducting a narcotics investigation, and in turn asked what she was doing there. "She stated that she had come here with a friend of hers by the name of Mike, that they were here visiting their friends Bobby and Pat." It was then about 10:30 p.m.

At this time the front door opened and defendant walked out of the front door and started walking towards the "Chevy II vehicle." The officer approached him and said, "Hi, Mike." Defendant replied, "Yeah, where do I know you from?" The officer then stated, "Well, I'm a police officer," and held out his badge. "At this he [defendant] thrust his right hand inside of his right pants pocket, turned, and started to go back the way he came. At this point, I grabbed for him, he turned and swung and began struggling, and both my partner, Sergeant Colella, and I attempted to restrain him. [¶] While we were doing this he was yelling, 'Bobby, Bobby, run. It's the men, it's the narcs, run." Upon cross-examination the officer testified that as soon as he told Mike (defendant) that he was a police officer, "He [defendant] threw his right hand in his right pants pocket. He [defendant] turned and started to move in a fast movement back towards the direction of the house." The officer's identification of himself and defendant's movement were "sort of a simultaneous statement and movement."

The officer heard some shuffling noise in the house as defendant yelled the warning to Bobby, so he went to the front door, at which time he heard the rear door slam and more running within the house. He entered the house and gave chase to Bobby Pierson who nevertheless successfully escaped. He then returned through the house to where Sergeant Colella and

---

[3]It later developed that this woman was the officer's informant. At the Piersons' 1538.5 hearing, which apparently took place after she had become a victim of a homicide, the officer testified that he asked her, "Is Bobby inside?" She replied affirmatively so he inquired of her if "Bobby was holding?" She answered, "I believe so since Mike went in there to score," which to him meant that Mike had entered the Pierson residence to purchase narcotics. (*Pierson* v. *Superior Court* (1970) *supra,* 8 Cal.App. 3d 510, 515-516, and fn. 1.) The case before us must be decided, however, only on the basis of the evidence which was actually before the trial court on defendant's 1538.5 hearing. (*Thompson* v. *Superior Court* (1968) 262 Cal.App.2d 98, 103 [68 Cal.Rptr. 530].) We likewise disregard the testimony of Officer Figelski at the trial that defendant's right hand which he thrust into his right pants pocket appeared to be holding something as defendant came out the door.

defendant were. "Mr. Levy was continuing to struggle. We subsequently handcuffed him and took him inside the house. Inside of his right pants pocket I felt a small soft object, and I retrieved these and they were five multicolored balloons, and they appeared to contain a white powdery substance. [¶] I then placed him under arrest and advised him of his constitutional rights." Eighteen grams divided in the five balloons were recovered.

At the time reentry into the house was made, the officer did not have either "a search warrant or warrant of arrest for any person." It was stipulated that the powder in the five balloons contained heroin.

Demand for disclosure of the name of the informant was made, but was refused pursuant to section 1042 of the Evidence Code.

## II.

Probable cause to arrest defendant not only for possession of narcotics, but even for other crimes (e.g., interference with police officers' discharge of duty (Pen. Code, § 148) and as an accessory (Pen. Code, § 32)) was established beyond cavil with defendant's outcry, "Bobby, Bobby, run. It's the men, it's the narcs, run." But, as defendant points out, his physical seizure was commenced before the outcry. ██ ██ In denying the section 1538.5 motion, the trial court implicitly found reasonable and probable cause for arrest since the officer made no pretense that the seizure was to frisk defendant for weapons. The issue then becomes whether there is substantial supportive evidence for that implied finding.

██ " 'A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court sitting as a finder of fact.' (*People* v. *Heard* (1968) 266 Cal.App.2d 747, 749 [72 Cal.Rptr. 374].)" (*People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) Even where the issues are submitted upon the transcript of the preliminary hearing, the credibility of witnesses, the weight of the evidence, and the inferences to be deduced from the evidence in the transcript remain as matters for the trier of fact. (*People* v. *Harrington* (1970) 2 Cal.3d 991, 996-997 [88 Cal.Rptr. 161, 471 P.2d 961].) ██ Where the trial court has found probable cause for a warrantless arrest or the reasonableness of a search, the appellate court will set aside that finding only if there is no substantial evidence in support thereof. (*Bergeron* v. *Superior Court* (1969) 2 Cal.App.3d 433, 436 [82 Cal.Rptr. 711]; *People* v. *Morales* (1968) 259 Cal.App.2d 290, 295 [66 Cal.Rptr. 234], cert. den. 393 U.S. 988 [21 L.Ed.2d 450, 89 S.Ct. 469]; *People* v. *Wozniak* (1965) 235 Cal.App.2d 243, 250 [45 Cal.Rptr. 222]; *People* v. *Swayze* (1963) 220 Cal.App.2d 476, 488 [34 Cal.Rptr. 5].)

Here, there is substantial evidence supportive of the trial court's implied finding of probable cause to arrest at the juncture when the officers seized defendant. From the reliable informant's information, the officer had reason to believe that Bobby Pierson was engaged in peddling heroin and "speed," and that he kept a stock of the contraband for sale in the premises pointed out to him by the informant. Although the female person in the Chevrolet Nova, parked on the Pierson premises, told the officer that defendant and she were there for a social visit with Bobby and Pat Pierson, the officer could have thought it strange that, if the purpose was really a social visit, the two of them had not gone inside. The hour was then about 10:30 p.m. The woman's remaining in the car would indicate an expectation that Mike (defendant) would be inside for only a brief time, giving rise to a possibility that the real purpose for being at the location was to make a buy and not a social visit. When the officer approached defendant, as he was leaving the house, and called him by his name, "Mike," defendant's response was, "Yeah, where do I know you from?" Almost simultaneously with the officer's identifying himself, defendant thrust his hand into his right pants pocket, turned, and commenced moving quickly back towards the house.

The totality of these ambient circumstances constituted an adequate basis for "a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion" (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den., 364 U.S. 841 [5 L.Ed.2d 65, 81 S.Ct. 79]) that defendant had made a purchase of narcotics in the house and that he then had contraband in his pocket. The defendant's having gone into and come out of a place of suspected narcotic activity is a ponderable factor in assessing probable cause for arrest. (*People* v. *Rodriquez* (1969) 274 Cal.App.2d 770, 775 [79 Cal.Rptr. 240].) Defendant's instantaneous movements of thrusting his hand into his pants pocket and retreating towards the house were indicative of a consciousness of guilt in light of the information concerning the Piersons and of defendant's short visit. "[D]eliberately furtive actions and flight at the approach of . . . law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." (*Sibron* v. *New York* (1968) 392 U.S. 40, 66-67 [20 L.Ed.2d 917, 937, 88 S.Ct. 1889, 1904].) (See also discussion in *People* v. *Superior Court* (1970) 3 Cal.3d 807, 818-820 [91 Cal.Rptr. 729, 478 P.2d 449].)

*People* v. *Garrett* (1965) 237 Cal.App.2d 701 [47 Cal.Rptr. 194], cited by defendant, actually lends more support for the People's case than for the

defendant's. There the officers had information from informants, whose identity they refused to disclose under former Code of Civil Procedure section 1881, subdivision 5, that Garrett was a user and seller of heroin and that he resided at a given location with an unidentified female person. Garrett and a woman came out of the premises under surveillance about 5:30 p.m. and proceeded to walk towards the corner of the block. The officers drove up alongside them, and one of the officers displayed his badge and identified himself as a police officer. Thereupon, Garrett, who was about 3 feet distant from the officer, turned and started to run back to the apartment from which he had come and also made a motion towards his mouth with his left hand. The officers pursued him and wrestled him to the ground. In the struggle, Garrett dropped a red balloon from his hand. Holding that the trial court erred in denying his motion to strike when the officers asserted their privilege (this was prior to the effective date of Evid. Code, § 1042), the court stated: "[A]bsent the information supplied by the unnamed informers, the mere flight of defendant justified neither arrest nor search. The additional circumstance present here, namely, that defendant's hand went up in the direction of his mouth as he started to run, adds nothing, unless connected to this information. Without it the fact that defendant made such a motion could have no particular significance." To be gathered from this statement is that the flight and furtive movement would have been sufficient to constitute probable cause if the information received from the unnamed and unidentified informants had not been stricken. Here the information from the reliable informant remained in evidence. Although it did not implicate defendant directly, it did establish the circumstantial factor that defendant had gone into and was exiting from a place where narcotics transactions were suspected to be taking place.

 Although the evidence may not be overwhelming, it is sufficient; we, therefore, may not overturn the implied finding of the trial court unless it is made clearly evident that upon no hypothesis could the trier of fact have reached the conclusion it did on the evidence adduced. Our function is not to reweigh the evidence. (Cf. *People* v. *Redrick* (1961) 55 Cal.2d 282, 290 [10 Cal.Rptr. 823, 359 P.2d 255].)

### III.

 Defendant further contends that the trial court erred in giving consideration to the information obtained from the informant in that the officer's testimony failed to meet the requirements of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]. This precise point does not appear to have been raised at the section 1538.5 hearing. It, therefore, may not be raised for the first time on appeal. (*People* v.

*Moore* (1970) 13 Cal.App.3d 424, 434, and fn. 8 [91 Cal.Rptr. 538].) Furthermore, the contention lacks merit. The officer did testify to underlying facts which the two-pronged test of *Aguilar* requires, namely, (1) "underlying circumstances" which would enable the judicial officer to independently judge the validity of the informant's conclusion that the narcotics were where the informant said they were; and (2) underlying facts from which the judicial officer can determine whether the informant was "credible" and his information "reliable" (*Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 641-642, 89 S.Ct. 584, 587]). The testimony that the informant had been in the premises in question a week or 10 days prior to defendant's arrest, that this was his second visit inside the premises, and that he was sufficiently acquainted with the Piersons to know that Pat Pierson apparently was not aware of the illicit activities going on within her own house, was a statement of underlying facts from which it may be inferred that the informant actually observed narcotics in the premises and narcotics transactions take place therein (see *People* v. *Hamilton* (1969) 71 Cal.2d 176, 181 [77 Cal.Rptr. 785, 454 P.2d 681]), and that he was not giving information based on unconfirmed hearsay or on rumors. The officer also testified as to how the informant's information had turned out to be reliable on two prior occasions, thus establishing his reliability or credibility. In the concluding portion of its opinion in *Spinelli,* the court stated: "In holding as we have done, we do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause . . . ; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial . . . ; and that [the] determination [by lower courts] of probable cause should be paid great deference by reviewing courts. . . ." (*Spinelli* v. *United States* (1969) *supra,* 393 U.S. 410, 419 [21 L.Ed.2d 637, 645, 89 S.Ct. 584, 590-591].)

## IV.

For the reasons which we have set forth above, we conclude that there was no error in the trial court's denying defendant's motion to suppress evidence under section 1538.5 of the Penal Code.

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.