49 Cal.App.3d 73 (1975)
122 Cal. Rptr. 252
THE PEOPLE, Plaintiff and Appellant,
v.
NICKEY JAY BIGHAM et al., Defendants and Respondents.
Docket No. 25920.
Court of Appeals of California, Second District, Division One.
June 12, 1975.
*75 COUNSEL
Joseph P. Busch, District Attorney, Harry B. Sondheim and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Appellant.
Belger & Courtney and Laurie R. Belger for Defendant and Respondent McVoy.
No appearance for Defendant and Respondent Bigham.
OPINION
LILLIE, J.
Defendants were charged with possession for sale of marijuana (§ 11359, Health & Saf. Code). Their motion pursuant to section 1538.5, Penal Code was granted, and the People appeal from order dismissing the information.
*76 The motion to suppress was heard de novo. In granting it the judge found that Deputy Reed was "a credible, honest witness" but stated, "my feeling is that the state of the law is such that I cannot approve of that kind of conduct." It is apparent, therefore, that he ruled as a matter of law that there was no probable cause to arrest Bigham (People v. Superior Court (Johnson) 15 Cal. App.3d 146, 151 [92 Cal. Rptr. 916]; People v. Superior Court (Thomas) 9 Cal. App.3d 203, 210-211 [88 Cal. Rptr. 21]), and this court "cannot presume that the facts were resolved against the People or that, contrary to its own indication, it disbelieved the testimony. [Citations.]" (People v. Manning, 33 Cal. App.3d 586, 603 [109 Cal. Rptr. 531].)
Probable cause has been defined as "that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (People v. Terry, 2 Cal.3d 362, 393 [85 Cal. Rptr. 409, 466 P.2d 961]; People v. Fein, 4 Cal.3d 747, 752 [94 Cal. Rptr. 607, 484 P.2d 583]; People v. Martin, 9 Cal.3d 687, 692 [108 Cal. Rptr. 809, 511 P.2d 1161].) No exact formula exists for determining reasonable cause and each case must be determined on the facts and circumstances presented to the officer at the time he is required to act (Guidi v. Superior Court, 10 Cal.3d 1, 9 [109 Cal. Rptr. 684, 513 P.2d 908]; People v. Block, 6 Cal.3d 239, 244 [103 Cal. Rptr. 281, 499 P.2d 961]; People v. Fein, 4 Cal.3d 747, 752 [94 Cal. Rptr. 607, 484 P.2d 583]; People v. Terry, 2 Cal.3d 362, 393 [85 Cal. Rptr. 409, 466 P.2d 961]; People v. Ross, 67 Cal.2d 64, 69-70 [60 Cal. Rptr. 254, 429 P.2d 606]); and he must be able to point to "specific and articulable" facts and circumstances in support of his conduct. (Cunha v. Superior Court, 2 Cal.3d 352, 356 [85 Cal. Rptr. 160, 466 P.2d 704].) The following are those circumstances presented to the deputies at the time they determined to effect the arrest of Bigham.
(1) 1. Information given by Robert Nelson, an untested informant, to Deputy Reed (who had been assigned to Firestone station for six years and who had testified as an expert in the field of narcotics) that earlier that day he had bought eight kilos of marijuana from Nickey Bigham, describing him, at his residence (Nelson was then under arrest for this offense), Bigham was "dealing heavy" and had at least eight more kilos of marijuana which he (Nelson) had seen in a living room in a converted garage on 222d Street from which Bigham and one McVoy, who lived there with him, conducted narcotic activities, and Bigham had a gun. Although such information provided by an informant of unknown reliability justifies investigation, standing alone it is not sufficient to *77 provide probable cause for an arrest (Mann v. Superior Court, 3 Cal.3d 1, 6-7 [88 Cal. Rptr. 380, 472 P.2d 468]; People v. Lara, 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Talley, 65 Cal.2d 830, 835-836 [56 Cal. Rptr. 492, 423 P.2d 564]; Willson v. Superior Court, 46 Cal.2d 291, 294 [294 P.2d 36]); however it is sufficient if it is corroborated in essential respects by such other facts, sources or circumstances as would justify the conclusion that reliance on the information was reasonable. (People v. Fein, 4 Cal.3d 747, 752 [94 Cal. Rptr. 607, 484 P.2d 583]; People v. Lara, 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Talley, 65 Cal.2d 830, 835-836 [56 Cal. Rptr. 492, 423 P.2d 564]; People v. Sandoval, 65 Cal.2d 303, 308-309 [54 Cal. Rptr. 123, 419 P.2d 187].) The purpose of such corroboration is to provide the element of reliability missing when the police have had no prior experience with the informer, and it is enough if it gives reasonable ground to believe that the informant is telling the truth. (People v. Lara, 67 Cal.2d 365, 374-375 [62 Cal. Rptr. 586, 432 P.2d 202].)
2. Independent facts supplied by official records and personal observations of other deputies which corroborated Nelson's information and made Deputy Reed's reliance thereon reasonable.
Deputy Reed was acquainted with the name "Nickey Bigham" in the course of his official duties at Firestone station and conversations with other deputies. Three weeks earlier Deputy Damerski, who lived in the same block as Bigham, "alerted" Deputy Reed to Bigham's exact address and his personal observations of "suspicious activities" on Bigham's premises  at all hours of the night people who appeared to be "loaded" either entering or leaving the premises with packages indicative of "dealing going on there," and frequently Nickey Bigham about the premises in a "loaded" condition. While Deputy Damerski did not name either McVoy or Bigham he did describe Bigham which fairly well matched the description given by Nelson supplying an element of corroboration. (People v. West, 3 Cal. App.3d 253, 257 [83 Cal. Rptr. 223].) Deputy Madden, who patroled the general area of Bigham's residence, also advised Deputy Reed that he had personally observed Bigham in a "loaded" condition on a number of occasions. The source of the deputies' information was personal observation, and their statements to Deputy Reed were competent to establish the facts related. (United States v. Ventresca, 380 U.S. 102, 110 [13 L.Ed.2d 684, 690, 85 S.Ct. 741].)
Deputy Reed personally learned from a check of Firestone records that Bigham resided at 515 East 222d Street (which confirmed the *78 specific address given to him by Deputy Damerski and the general address on 222d Street given by Nelson), from a photograph in the police files what Bigham looked like and from the arrest records that he had numerous arrests, one for possession of marijuana while a juvenile and one for sale of marijuana.
3. Deputy Reed's own personal observation of Bigham's conduct on the premises. Around 1 a.m. Deputy Reed and eight other deputies some in uniform, armed with the sum of the foregoing information went to 515 East 222d Street with the sole intention of talking to Bigham and his parents with the hope of obtaining consent to search the premises and if that failed, intending to stake out the location in hopes that "something might move"; he did not go there with the intention of arresting Bigham. When they approached the house Deputy Reed saw Bigham, whom he recognized from police photographs, walking from the rear of the residence through the gate toward the street; at that time Bigham looked in their direction, "spun around" and ran through the gate toward the garage yelling "Jesus Christ, the cops." Bigham's flight when confronted by uniformed police, and his spontaneous exclamatory statement (particularly under circumstances that earlier in the day he had sold Nelson eight kilos of marijuana for which Nelson was under arrest) were indicative of consciousness of criminal involvement (People v. Levy, 16 Cal. App.3d 327, 333-335 [94 Cal. Rptr. 25] [defendant retreated yelling "Bobby, Bobby, run. It's the men, it's the narcs, run."]; People v. Satterfield, 252 Cal. App.2d 270, 271-273 [60 Cal. Rptr. 733] [defendant ran into the house saying, "The law. It's the law."]; People v. Landry, 230 Cal. App.2d 775, 777-780 [41 Cal. Rptr. 202] [defendant upon opening door said, "Jesus Christ, the  cops!" and dashed back into the room]). The totality of the facts and circumstances in the possession of Deputy Reed at that time was sufficient as a matter of law to constitute probable cause to arrest Bigham. It was then the officers took up pursuit and Deputy Reed yelled, "Halt, you're under arrest." This was sufficient notice to Bigham that he was accused of a crime and had been arrested.[1] Knowing full well they *79 were law enforcement officers, he was under arrest and their purpose in pursuing him was to perfect the arrest, Bigham continued to run toward the garage; he fled into the garage, the door closed and someone tried to bar the door on the inside whereupon the pursuing deputies forced entry, took Bigham into custody and arrested McVoy.
(2) The notice requirements of section 844, Penal Code provide that before breaking into a home to effect an arrest a police officer must identify himself, announce his purpose and demand entry. (People v. Hill, 12 Cal.3d 731, 758 [117 Cal. Rptr. 393, 528 P.2d 1].) The basis for the requirements is found in the individual's right to privacy, the protection of innocent persons in the home and the policy of discouraging confrontations conducive to violence which might injure both occupants and the police. (People v. King, 5 Cal.3d 458, 464, fn. 3 [96 Cal. Rptr. 464, 487 P.2d 1032]; Duke v. Superior Court, 1 Cal.3d 314, 321 [82 Cal. Rptr. 348, 461 P.2d 628]; Greven v. Superior Court, 71 Cal.2d 287, 292 [78 Cal. Rptr. 504, 455 P.2d 432]; People v. Rosales, 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489].)
(3) Excused noncompliance with the requirements of section 844 can occur when the attempt to comply falls short of substantial compliance, or there has been no attempt to comply. (People v. Hall, 3 Cal.3d 992, 998, fn. 3 [92 Cal. Rptr. 304, 479 P.2d 664].) Noncompliance may be excused when specific facts known to the officer before his entry are sufficient to support his good faith belief that compliance will increase his peril, frustrate the arrest, or permit the destruction of evidence. (People v. Bennetto, 10 Cal.3d 695, 700 [111 Cal. Rptr. 699, 517 P.2d 1163]; People v. Dumas, 9 Cal.3d 871, 878 [109 Cal. Rptr. 304, 512 P.2d 1208]; Parsley v. Superior Court, 9 Cal.3d 934, 938 [109 Cal. Rptr. 563, 513 P.2d 611]; People v. Tribble, 4 Cal.3d 826, 833 [94 Cal. Rptr. 613, 484 P.2d 589].) At first blush the case would seem to fall within the ambit of excused noncompliance because the deputies did not verbally identify themselves and expressly announce their purpose and demand admittance, but there is no showing that the deputies believed they were in peril[2] or evidence was about to be destroyed; and as to an attempt to frustrate arrest,[3] they had already arrested Bigham before he fled into the *80 garage and there is no evidence the deputies believed he could have escaped therefrom.
Considering the basis for the requirements of section 844, Penal Code we conclude that even though there was no recitation of the formalities thereunder that the appearance and conduct of the deputies satisfied the notice requirements of the statute. (4) Substantial compliance may occur when there has been some attempt to comply with the requirements of section 844 but compliance falls short of strict literal compliance (People v. Hall, 3 Cal.3d 992, 998, fn. 3 [92 Cal. Rptr. 304, 479 P.2d 664]). Identification alone can constitute substantial compliance if prior to entry the surrounding circumstances made the officers' purpose clear to the occupants (People v. Hill, 12 Cal.3d 731, 758 [117 Cal. Rptr. 393, 528 P.2d 1]; Greven v. Superior Court, 71 Cal.2d 287, 291-293 [78 Cal. Rptr. 504, 455 P.2d 432]) or "showed that the demand for admittance would be futile." (People v. Rosales, 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489]; People v. Hall, 3 Cal.3d 992, 997-998 [92 Cal. Rptr. 304, 479 P.2d 664]; People v. Limon, 255 Cal. App.2d 519, 522 [63 Cal. Rptr. 91].) It is true that at the outset of their appearance on the premises upon recognizing Bigham the deputies did not formally recite that they were officers (there appears to have been no time to do so before Bigham saw their uniforms, turned and fled) but the conclusion is inescapable that they identified themselves to him as surely as though they had done so verbally for it cannot be denied that when he first laid eyes on the uniformed officers he knew instantly that they were officers and acknowledged as much by his flight and his spontaneous exclamatory statement "Jesus Christ, the cops." As Bigham ran to the garage he was put on further notice that they were officers by their command, "Halt, you're under arrest." Nor did the deputies, when they came upon the closed door of the garage through which defendant had just fled, knock or expressly demand entry or announce their purpose for admittance, but from his knowledge of their identity as officers, command to halt and announcement he was under arrest, his retreat to the garage, their hot pursuit of him, his flight into the garage and the attempt of a confederate to bolt the door from inside, Bigham was reasonably expected to and clearly did know that the deputies sought entry to the garage to take him into custody. Additionally, it was reasonable for the deputies to assume that had they stopped to knock or demand entry and announce their purpose such formalities would have been futile because the act of barring the garage door from within manifested a clear intent on the part of the occupants to prevent entry and Bigham having sought to avoid *81 being apprehended by running into the garage, it is virtually certain that they would not have opened the door. In People v. Limon, 255 Cal. App.2d 519, 521 [63 Cal. Rptr. 91], the officers and a parole officer had Limon's apartment under surveillance; his codefendant opened the door and started into the hallway when he saw the officers and retreated into the apartment; while the door was open they saw Limon inside; as the codefendant tried to close the door the officers rushed toward the door, opened it and entered. As in the case at bench no one mentioned they were officers, no one explained the purpose for which admission was desired and no one demanded admittance. Without any consideration of the theory of either substantial compliance or excused noncompliance the court simply said that compliance with section 844 "was not required" and held: "When, as here, a defendant before the entry already knows what he would have learned from the demand for admittance and explanation of purpose set forth in section 844, insistence upon a recitation of those formalities is idle." (P. 522.)
(5) In light of the purposes for which section 844, Penal Code was enacted, we conclude that where the officers are in fresh pursuit of a suspect whom they have just arrested and who knows their identity, he is under arrest and they are pursuing him to take him into custody, their forced entry to his home (we treat the converted garage as living quarters) into which he has fled and inside of which he is attempting to bar entry, was effected in a manner which substantially complies with the requirements of section 844 even though the officers did not recite those formalities.
Once inside the garage Deputy Reed saw baggies, scales and a walkie-talkie on the floor and Bigham, who was trying to stuff a duffle bag containing 10 bricks of marijuana between the couch and the wall, and apprehended him seizing the duffle bag. McVoy was running inside of the garage and he was arrested. Deputy Reed properly limited his observations in the garage to evidence falling into plain view. (6) The observation of that which is in plain sight of an officer who is where he has a right to be does not constitute a search in the constitutional sense (Lorenzana v. Superior Court, 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]) and the evidence may be seized by him without a warrant (Harris v. United States, 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 *82 S.Ct. 992]; People v. Hill, 12 Cal.3d 731, 758 [117 Cal. Rptr. 393, 528 P.2d 1]; People v. Block, 6 Cal.3d 239, 243 [103 Cal. Rptr. 281, 499 P.2d 961]).
The order is reversed.
Wood, P.J., and Hanson, J., concurred.
NOTES
[1] Respondent argues that Deputy Reed went to the premises intending to arrest him "on sight" and that it was what the trial court must have believed in granting the motion. The court having found Deputy Reed to be a credible witness, we cannot assume it believed respondent's version of the facts, particularly in light of Deputy Reed's repeated testimony that he went to the premises with no intention of arresting defendant, and formed the intention of arresting him only when defendant turned and fled. At the preliminary hearing, asked "At what time did you form the intent to arrest him?" Deputy Reed answered, "Upon my initial contact with the defendant." Queried about this answer, Deputy Reed explained repeatedly that when he arrived and recognized Bigham, he did indeed then decide to arrest him "upon his running," which is entirely consistent with his trial testimony.
[2] In several "hot pursuit" cases noncompliance was excused (People v. Smith, 63 Cal.2d 779, 797 [48 Cal. Rptr. 382, 409 P.2d 222]; People v. Gilbert, 63 Cal.2d 690, 707 [47 Cal. Rptr. 909, 408 P.2d 365]) but in each was the added circumstance that the officers believed themselves to be in peril if they complied.
[3] "Even an escape from custody, ... does not alone justify entrance into a house to make an arrest without explanation of purpose and demand for admittance. (Pen. Code, § 855; [citations].)" (People v. Rosales, 68 Cal.2d 299, 304 [66 Cal. Rptr. 1, 437 P.2d 489].)