[Civ. No. 48631. Second Dist., Div. One. Dec. 30, 1976.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
MARK DOUGLAS BOWDEN et al., Real Parties in Interest.

512

## COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim and Donald J. Kaplan, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Irwin Pransky, G. Keith Wisot, Deputy Public Defenders, Joseph P. Argenta, Charles Lloyd, Richard A. Walton and Donald R. Wager for Real Parties in Interest.

## OPINION

**HANSON, J.—**

### INTRODUCTION

The People seek a statutory writ of mandate pursuant to Penal Code section 1538.5, subdivision (o), to compel the superior court to deny real parties in interest's motions to suppress evidence which was seized in a garage adjacent to defendant Bowden's home without a search or arrest warrant. The superior court, following a full de novo hearing, had granted defendants' motions to suppress the evidence upon the basis that as a matter of law the police had no authority to order the five

defendants (real parties in interest) from the garage after accepting as true the testimony of the police officers and refusing credit to defense testimony.

## THE CASE

The five defendants, Mark Douglas Bowden, Everett Derrell Brumfield, Carl Edward Duckett, Maurice Duckett, and Raymond Mack (real parties in interest) (hereinafter defendants), are charged with one count of murder (Pen. Code, § 187), six counts of robbery (Pen. Code, § 211), and one count of burglary (Pen. Code, § 459).

On April 1, 1976, a five-day de novo hearing was commenced by the superior court on defendants' motion to suppress evidence consisting of approximately 57 items of property seized in a garage adjacent to defendant Bowden's home on August 29, 1975, as well as "all items that were seized as a result of a search warrant that was executed subsequent to the initial seizure" pursuant to Penal Code section 1538.5.

Following the hearing on April 8, 1976, the court below granted defendants' motion to suppress the evidence. The court based its ruling on its conclusion that the police officers had no right to order the defendants to come out of the garage. The court stated it based its conclusion solely on the testimony of the police officers and gave no credence to the testimony of defense witnesses.[1]

---

[1]The reporter's transcript of the proceedings reflects the following:
The trial court expressed its findings as follows:
"MR. PLUMER [Deputy District Attorney]: . . .

. . . . . . . . . . . .
"But we are talking about at the moment in time when the officer said, 'Come out of there with your hands up where I can see them.' Was that command reasonable, and was it reasonable for him to do the follow up, which is to go inside and look around?
"THE COURT: That's the critical question. And when Officers Zerbey and Skiba—who I am complimenting them for their good work; they were not constitutional lawyers, nor are they skilled in knowing the law, nor the various refinements of the law respecting search and seizure—they did what they thought under the circumstances was proper police conduct.
"And as I say, I commend them for it. But I think that the law was against them. I think that they had no authority to order these people out of the garage. And if that order was by—and then they—when they came out, it was pursuant to an order of authority, and anything thereafter was tainted, and so was the search and seizure.
"And I am going to grant the motion under 1538.5, because I have no other alternative.
"I want it understood, of course, on the record, that I thoroughly—that I think the police officers acted within their own good belief that they were performing their duty in a perfectly legal and lawful manner.
"MR. PLUMER: Thank you, your Honor. Do I understand that from the Court's

comments, that the Court is resolving the questions of credibility in favor of the police officers?

"THE COURT: No. On the contrary, I'm deciding that the credibility is in their favor.

"MR. PLUMER: That's what I am saying.

"THE COURT: Yes, the credibility is in their favor.

"MR. PLUMER: That the Court is viewing the evidence as presented by the police?

"THE COURT: Absolutely. But I think that their action in ordering them out of the garage, under all of the circumstances in this case, was unwarranted. And for that reason, I am sustaining it.

"I am not crediting any of the testimony given by the defense in this case. Without even having to make a ruling on that, I am saying that, predicated upon their own testimony, which I am accepting as being true, I think as a matter of law they had no authority to order the occupants in that garage, on that particular day, out of that premises at that particular time."

At a later hearing, the court further explained its ruling as follows:

"MR. WAGER [Counsel for defendant Raymond Mack]: Pardon me, your Honor. I would like us to go on the record now, in clarifying a statement made by the Court at the conclusion of the motion.

"The Court was asked by counsel for the People, Mr. Plumer, whether he was deciding this on a credibility basis, and in effect the Court said it was resolving the credibility issue in favor of the People's witnesses.

"THE COURT: That's what I said.

"MR. WAGER: Right. I have no doubt the Court did that. But I think there might be some confusion in a Court of Appeal as to what the Court meant by that. And let me review something.

"THE COURT: What I meant by that is this: That the testimony given by the police officers, I have taken as being credible and believable; and I am predicating my ruling upon their testimony. And it is even despite the fact that they have testified as they did, it is my belief that under the law, assuming everything they said was correct—and I am assuming it, and I am taking it as such—that there was an unlawful search and seizure.

"And I am predicating it upon that, so that I may present to the Court of Appeal a clear cut issue on the arguments which were made and the cases which were cited:

"Namely, that under all of the circumstances, taking all of the facts under consideration, that the People educed, and believing those facts, that nevertheless there was an unlawful search and seizure.

"MR. WAGER: Your Honor, in regard to that, the point I want to make is this: In the Court's discussion with Mr. Plumer, before the Court ruled, I feel the Court was taking the following position, factually:

"That although the Court did not apparently believe much of what young Mr. Dunn testified to on the stand, I felt the Court had made a finding that Mr. Dunn was one of the two people who did in fact come out of the garage, confronting Officer Skiba, Mr. Dunn being six foot two.

"And that although Officer Skiba felt that these two people might be the suspects who had associated with young Mr. Bowden in the earlier robbery, and that was his reason for wanting to stop them and fill out field interrogation cards, that the Court was concluding—and I felt this was clear from the discussion with Mr. Plumer—that Officer Skiba could not have rationally concluded—even though he did hold the opinion—that the two young men were the suspects who matched the description of five six to five eight, 16 to 18 years old, when Mr. Dunn was in fact six foot two.

"THE COURT: No, I don't think that that had anything to do with the determination. From the information that they had, and everything that took place up to the time that they were ordered out of the garage, I said that their ordering them out of the garage constituted an improper conduct on their part, legally.

"And whether or not they had in mind that they might have been two of the suspects, I

The People timely filed a petition for writ of mandate[2] pursuant to Penal Code section 1538.5, subdivision (o), to compel the court below to deny defendants' motion to suppress.

## THE FACTS

Since the court below ruled as a matter of law on the testimony of the police officers only and afforded no credence to the testimony of defense witnesses, we focus on prosecution testimony and need not summarize the testimony of defense witnesses:

The reporter's transcript reflects that in a telephone conversation with an informant, who refused to identify himself, Police Officer Gary Zerbey was told the names of five persons (Mark Bowden, Derrell, Kenneth and Ricky Brumfield and Reggie) who committed several burglaries in a particular area along Eighth Avenue between Slauson and Florence in Los Angeles. According to the informant, the stolen property, consisting of television sets, cameras, stereo equipment, silverware, and guns, was in a garage adjacent to the home of defendant

---

don't believe that he ever—I don't believe that Skiba even thought that they were two of the suspects in any robbery which took place on August 9th.

"MR. WAGER: Thank you. Could we have these proceedings as part of the record for the Court of Appeal? So it could be so clarified?

"THE COURT: Yes.

"MR. WAGER: Thank you.

"MR. PLUMER: Your Honor, I think that Officer Skiba did testify that—Officer Skiba testified he did not recall the physical descriptions of the two persons who ran back there.

"We also have the testimony—or the lack of testimony—as to who the other person was. I think that Officer Skiba did also testify that he believed that it was a possibility that the two people that ran were in fact the two missing suspects.

"THE COURT: Well, if that is so, then he had absolutely no basis for it. I can't—

"MR. PLUMER: Is the Court then making a finding that if the Court does not—

"THE COURT: I make the finding that there is no evidence. It's not a question of believing him. But there is no evidence—or credible evidence—that the two persons who ran into the garage were the two suspected robbers of this August 9th—if I remember correctly—of this August 9th robbery.

"MR. PLUMER: Thank you."

[2]The motion to suppress was granted on April 8, 1976. The 30-day time period in which the People could have filed a petition for writ of mandate pursuant to Penal Code section 1538.5 expired on May 8, 1976. We take judicial notice that May 8, 1976, was a Saturday and that May 9, 1976, was a Sunday.

If the last day to do an act falls upon a holiday, the time is extended to the next day which is not a holiday. (Code Civ. Proc., § 12a.) Saturday and Sunday are deemed holidays for the purpose of computing time. (Code Civ. Proc., §§ 12a, 12b.) The method of computing time in Code of Civil Procedure section 12a is applicable to criminal matters. (*People* v. *Taylor* (1975) 46 Cal.App.3d 513 [120 Cal.Rptr. 762]; Cal. Rules of Court, rules 45(a), 53.) Here the petition was filed on May 10, 1976, the following Monday, and is, therefore, timely.

Bowden, one of the five named by the informant. The informant told Officer Zerbey that "they were getting the property ready to move out." A check of police records revealed recent burglaries in the Eighth Avenue area described by the informant and the property stolen matched the description of property provided by the informant.

Officer Zerbey had earlier investigated an August 9, 1975, robbery in which shots were fired and a revolver stolen in a previous burglary was recovered at the scene. Defendant Bowden had been arrested as one of the three involved in the August 9 robbery, but defendant Bowden, then a juvenile, had been released. Bowden had, however, failed to appear for a scheduled interview with Officer Zerbey. The officer did not know the identity of the other two suspects in that August 9 robbery but believed that they might be connected with the stolen property mentioned by the informant.

Initially intending to question defendant Bowden about that August 9 robbery, the possibility of stolen property in the garage, and perhaps to obtain consent to search the garage, Officer Zerbey and two additional officers, who had been fully briefed on all facts known to Officer Zerbey, went to defendant Bowden's residence. Upon arrival, the officers observed an unattached garage about five feet to the rear of the house and that a driveway led from the street to the garage. While Officer Zerbey knocked on the front door of the home, Officer Lawrence Skiba whose police badge was visible on his street jacket proceeded up the driveway in order not to be within eyesight of whoever opened the front door. The other officer remained where he could observe the front door.

Two of the defendants came out of the garage and looked at Officer Skiba who by then had walked up the driveway to a place near the side door of the house. The two yelled, "Look out! The Cops!" and began to run. Officer Skiba yelled, "Hold it!" but the two fled back into the garage they had just exited. From outside the garage, Officer Skiba could "hear a number of voices inside, yelling, 'Pigs. What are the fucking pigs doing here?'" He could also hear the sounds of furniture being moved. Officer Skiba was unable to determine from the emitting sounds how many persons were in the garage but "heard multiple voices."

Following is the testimony of Officer Skiba in respect to his state of mind and events that followed.

"Q Okay. After hearing these noises, then what was the next thing that you did?

"A  I put myself against the side of the garage, and I yelled, 'Pete'—who was my partner—and then I said, 'Police. Come out.'

"Q  All right. Now, what was your purpose for ordering the occupants of the garage to come out?

"A  I wanted to talk to the two gentlemen that ran away from me, and I did not want to go into the garage after them.

"Q  Why?

"A  I didn't know how many were in there. With the prior information that there was possibly guns in there, I didn't want to go in there and get blown up.

"Q  Did you consider the possibility that one or more of the persons in there may have been the missing robbery suspects?

"A  Yes.

"Q  Did you consider the possibility that one or more persons may be attempting to conceal the nature of—the type of evidence suggested by the phone call which Investigator Zerbey informed you of?

"A  Yes, with the moving of furniture and everything in there.

"Q  All right. Now, you said that you did order the people inside to come out?

"A  Yes.

"Q  Can you tell us your exact words on that, if you can recall?

"A  I said, 'Police. Come on out.'

"Q  And did anyone come out?

"A  There was a short hesitation, but five people did exit the garage."

Officer Skiba also testified that he ordered the occupants of the garage to come out for purposes of investigation for robbery and receiving

stolen property and because he was concerned that there might be someone around in the garage who might shoot him.

As Officer Skiba thought that there might be more persons still in the garage, Officer Skiba entered the garage and in the course of his search for additional suspects observed the property which is the subject of the motion to suppress.

## ISSUE

The critical issue presented is whether or not the police officers acted reasonably and thus lawfully under the circumstances in ordering defendants out of the garage.

## DISCUSSION

We "cannot presume that the facts were resolved against the People or that, contrary to its own indication, it [the trial court] disbelieved the [officer's] testimony. [Citations.]" (*People* v. *Manning* (1973) 33 Cal.App.3d 586, 603 [109 Cal.Rptr. 531].)

■ Defendants' preliminary contention that Officer Skiba had no authority to be in the driveway is without merit. Officer Skiba testified that he entered the driveway for safety and in particular in order to have better cover in the event that there was shooting at the front door; that he observed the gate to the driveway only after he was in the driveway and that it (the gate) was open; and that he was in the driveway near the side door to the house when he first saw the two defendants coming from the garage. There is nothing in the record to indicate that Officer Skiba had not followed a route normally used for access to the house. There was no entry into an area foreclosed to the public as was the case in *Vidaurri* v. *Superior Court* (1970) 13 Cal.App.3d 550 [91 Cal.Rptr. 704], in which an officer entered an enclosed back yard by opening the gate. There is nothing remotely similar in the facts of the instant case to the facts in *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626 [108 Cal.Rptr. 585, 511 P.2d 33], in which an officer entered upon private property and peered through a small opening in a window shade to observe activities within a residence. Here the two defendants could not demonstrate any reasonable expectation of privacy when they left a garage visible from the street.

We turn to the key issue upon which the court below based its determination as a matter of law, i.e. that the officers "had no authority to order the defendants out of the garage."

The People contend that such authority did exist as Officer Skiba had the right to temporarily detain all the occupants of the garage for investigation in view of the totality of the circumstances.

■ We conclude that the record supports the People's contention and that the order of suppression is in error. Our reasoning follows.

■■ Reasonable cause to make an arrest without a warrant must be tested by facts known to an officer at the time he is required to act (*Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 9 [109 Cal.Rptr. 684, 513 P.2d 908]) but he must be able to point to "specific and articulable facts" and circumstances (*Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704]) which would lead a man of ordinary care and prudence to believe or entertain a strong suspicion that the person arrested is guilty of a crime. (*People* v. *Martin* (1973) 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161].)

The case at bench initially involved a temporary detention for investigation purposes and not an arrest. ■ The intrusion caused by a temporary detention is substantially less than that in an arrest and hence "[I]t is well established that a temporary detention may be justified by circumstances falling short of probable cause to arrest a suspect. . . ." (*People* v. *Harris* (1975) 15 Cal.3d 384, 388 [124 Cal.Rptr. 536, 540 P.2d 632].) "[W]here there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint. [Citation.]" (*People* v. *Flores* (1974) 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353].)

■ Here, Officer Skiba had been advised of all the information related by the anonymous informant to Officer Zerbey including the fact that the stolen property was in the garage and that the garage was adjacent to the home of one of the five alleged burglars named by the informant. He also knew that the burglaries as described by the informant had in fact been committed and that there was a link between one of the persons named by the informant and a previous robbery. Although such information may not have been sufficient to constitute probable cause to arrest or search, it clearly called for and justified further investigation. His observation of the flight of the two defendants and having heard their spontaneous exclamatory statements established that the two were aware of police presence. The flight and hysterical reaction were indicative of "fright and consternation." (*People* v. *Satterfield* (1967) 252 Cal.App.2d 270 [60 Cal.Rptr. 733].)

■ Had the two defendants who came out of the garage merely refused an interview with police the situation would be different since there is no requirement that a suspect consent to a police interview. (*Lewis* v. *Superior Court* (1964) 226 Cal.App.2d 102 [37 Cal.Rptr. 773].) There was, however, no request by the police for such an interview. There was only flight and flight at the approach of law officers is a "strong indicia of *mens rea.*" (*Sibron* v. *New York* (1968) 392 U.S. 40, 66-67 [20 L.Ed.2d 917, 936-937, 88 S.Ct. 1889].) ■ In view of the total information known by Officer Skiba and his observation of the two defendants' flight, Officer Skiba had a duty to temporarily detain the two for purposes of investigation. Accordingly, his command to halt to temporarily detain the two defendants who exited the garage for purposes of investigation was lawful.

We turn to the next step as to whether or not the actions of the two defendants in running back into the garage and the apparent conduct of others in the garage, coupled with the knowledge which Officer Skiba had, as hereinbefore described, constituted a reasonable basis to render the order for everyone to come outside of the garage lawful.

It appears logical and reasonable that if Officer Skiba could lawfully attempt to detain the two defendants who just exited the garage for investigation outside the garage he should have the right to place them back into the same circumstance where he first found them (outside) to follow through with his lawful detention for questioning. Reason and logic dictates they should not avoid lawful detention by running back into the garage and closing the door.

At the point in time when the two defendants ran back into the garage, Officer Skiba was faced with two immediate choices: (1) pursue them into the garage, or (2) order them out. As to the first choice, he knew that there were others in the garage in addition to the two who fled, that other occupants of the garage were reacting in the same manner as the two who fled, and that there well could be guns in the garage. He chose the second course of action, to order all the occupants in the garage to come out and thereby lessen the confrontation inherent in a forced entry. ■ It is "firmly established that in carrying out an investigation of crime police may take reasonable steps to protect themselves from violence." (*People* v. *Turner* (1969) 2 Cal.App.3d 632, 635 [82 Cal.Rptr. 763].) If Officer Skiba had followed the two fleeing defendants into the garage he could not have avoided detention for investigation of all of the occupants which would have been lawful. ■ The order to exit not

only protected the police but also protected all the occupants of the garage from a potentially violent confrontation.

In *People* v. *Bigham* (1975) 49 Cal.App.3d 73 [122 Cal.Rptr. 252], an untested informant told police of purchases of drugs from defendant and police officers independently observed defendant's suspicious conduct. A police officer went to defendant's home for the purpose of conducting an investigation. The defendant upon seeing the police officer spun around and yelled, "Jesus Christ, the cops." He ignored the officer's commands to halt and ran into a garage. In *Bigham* the totality of the facts and circumstances was sufficient for the arrest of the defendant.

*Bigham* differs from the facts of the present case in that Officer Skiba did not know the identity of the two defendants who fled. We perceive that difference to mean only that Officer Skiba did not possess sufficient information for the arrest of the two defendants when he ordered them to halt. Officer Skiba did, however, possess sufficient information to detain the two defendants although admittedly it was the defendants' reaction to the police which connected the two to the information known by Officer Skiba when he arrived at defendant Bowden's home.

Here as in *Bigham* the two defendants ignored a police order to halt and ran into a garage. That further act of flight reinforced the officer's reasonable belief that the two defendants were exhibiting consciousness of criminal involvement and established that the defendants were refusing to submit to a lawful temporary detention. ▋ A suspect does not possess the right to resist a lawful detention. (See *People* v. *Hoze* (1971) 16 Cal.App.3d 671 [94 Cal.Rptr. 360]; Pen. Code, § 148.)

In *People* v. *Blodgett* (1956) 46 Cal.2d 114 [293 P.2d 57], it was held proper for an officer to detain and order the occupants of a double-parked taxi to alight based upon the late hour and the unusual conduct of the occupants. In *People* v. *Turner, supra,* 2 Cal.App.3d 632, a vehicle matching a robbery vehicle of the previous evening was deemed to have been lawfully stopped and detained for investigative purposes. The occupants were ordered outside for the safety of the officers.

The assertion that Officer Skiba was acting on a mere hunch as to the occupants of the garage is not supported by the record. He knew that the two defendants had fled into a garage where he believed there was stolen property including guns and that others in the garage were screaming and moving furniture. The present case is clearly distinguishable from *Irwin* v. *Superior Court* (1969) 1 Cal.3d 423 [82 Cal.Rptr. 484, 462 P.2d 12], in which the defendant was arrested after being observed standing

next to baggage with the next sequential ticket number to baggage containing marijuana and from *People* v. *Lathan* (1974) 38 Cal.App.3d 911 [113 Cal.Rptr. 648], in which a suspect was merely observed in a high crime area.

## CONCLUSION

Accordingly, by reason of the foregoing we conclude from all the information known by Officer Skiba when he ordered all the occupants from the garage he possessed "a rational belief of criminal activity" (*People* v. *Flores, supra,* 12 Cal.3d at p. 91) with which the defendants were connected and lawfully ordered all of the occupants from the garage for the purpose of temporary detention to investigate and that the trial court's determination of unlawfulness was erroneous.

We note by reason of its ruling on the authority to detain the court below was precluded from making factual determinations necessary to the resolution of other issues raised by the defendants. In view of the lack of findings by the trial court on those issues, we decline to rule on the legality of the police conduct after the occupants were ordered from the garage and remand the matter to the trial court with the direction that it vacate its order granting the motions to suppress the evidence and thereafter conduct further proceedings for the limited purpose of making factual determinations on the other unresolved issues previously raised by defendants in their motions pursuant to Penal Code section 1538.5. Since a full de novo hearing has been had, additional evidence should be allowed only if the standards set forth in *Madril* v. *Superior Court* (1975) 15 Cal.3d 73 [123 Cal.Rptr. 465, 539 P.2d 33], are satisfied.

## DISPOSITION

Let a peremptory writ of mandate issue ordering the superior court to annul the order of April 8, 1976, in Los Angeles Superior Court case No. A 073503 entitled The People of the State of California v. Mark Douglas Bowden, et al., granting the motions by defendants to suppress evidence and thereafter to conduct further proceedings in accordance with the directions in this opinion.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 27, 1977, and the petition of the real parties in interest for a hearing by the Supreme Court was denied February 23, 1977.