[Crim. No. 11306.    Second Dist., Div. Four.    Aug. 4, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. PAUL SAMUEL PORTER, Defendant and Appellant.

Snyder & Gorenfeld and Abraham Gorenfeld for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant prosecutes this appeal from the judgment entered upon his conviction by the court of possession of marijuana (Health & Saf. Code, § 11530), and violation of the Dangerous Weapons Control Law (Pen. Code, § 12021).

During the course of the trial the court permitted, over defendant's objection, the introduction of a quantity of marijuana and two revolvers discovered secreted in the apartment in which defendant was arrested. This evidence formed the basis for his conviction. The prosecution sought to show that the search and seizure which produced this evidence was incidental to an arrest based upon probable cause. As will be observed from the following discussion, we have concluded that no reasonable or probable cause for arrest was shown, the search and seizure were therefore illegal and, consequently, the judgment must be reversed.[1]

On the issue of probable cause, this evidence was presented: One Willard Harris was arrested by two deputy sheriffs and two federal agents at about 10 a.m. on August 11, 1962, as he approached his parked car, after allegedly agreeing to sell counterfeit money to an undercover officer. The car was searched and a quantity of counterfeit money was found. Also discovered were large quantities of amphetamine sulphate, nembutal and seconal tablets—drugs which it is illegal to possess without a prescription. Harris was taken to the East Los Angeles Sheriff's Station and booked. He was then questioned by Deputy Sheriffs Weldon and Keeney, and by Federal Agents Boggs and Weaver. He told them he was dealing in drugs and counterfeit money and that he had a partner named Paul Porter, (defendant); that he had more "pills" and two revolvers at his apartment, but no counterfeit money; that he would not tell them where his apartment was located, however, because his partner was there and he

---

[1] This was the second trial of this case. In the first trial the trial court found that defendant consented to the search, and the evidence was received on that basis. The question of whether there was probable cause was not presented or ruled upon. The judgment was subsequently reversed in *People* v. *Porter*, 227 Cal.App.2d 211 [38 Cal.Rptr. 621], on the ground no valid consent had been obtained.

"didn't want him busted." He also told the officers that if he did not get back to the apartment by midnight that night, his partner would "dump the junk." (Dispose of the narcotics.)

Throughout the day, Harris persisted in his refusal to tell the officers his address. A notebook was discovered in his possession with three addresses written down. Each address was put under surveillance by the police. It was learned that a Paul Porter had lived at one of the addresses (in Downey) until two weeks before. The name Paul Porter was checked and it was learned that a man by this name had been convicted of forgery. It was also determined that this same man owned a new model Thunderbird. Harris indicated that his partner had just bought a black Thunderbird. At about 12:30 a.m. the following morning, Harris told the officers that he lived at the Huntington Park address in the notebook. Deputy Sheriff Weldon testified, "When it was past midnight he (Harris) said that his partner would get rid of anything there by midnight and he thought there would be no objection to searching the apartment, so he wouldn't have any now anyhow so go ahead."

Deputy Sheriff Keeney and Agents Boggs and Weaver arrived at the apartment in question at about 2:45 a.m. They observed a black Thunderbird parked nearby. The license corresponded to the car registered to Paul Porter. A dim light was observable inside the apartment. The officers knocked on the door, defendant opened it and the officers entered the apartment.[2] Once inside a search was made which turned up the contraband and the two revolvers hidden under a sink. At this point defendant was arrested. The officers had no arrest or search warrant.

The Attorney General maintains that the prosecution carried its burden of showing proper justification for the warrantless arrest and search (*People* v. *Haven*, 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]), by showing that the officers had reasonable or probable cause to arrest defendant.

The officers acted upon information supplied by Harris, concededly an untested informant. " 'Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency

---

[2] When one of the officers knocked on the door, a voice from inside said, "Is that you, Bill?" The deputy answered affirmatively. Defendant then opened the door and, according to the officer, consented to the officers' entry into the apartment. It was determined in *People* v. *Porter, supra,* that the search was not with consent. Consequently, no issue of consent is presented in this appeal.

[citing a case], an arrest may not be based solely on such information [citing several cases], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable.' " (*People* v. *Reeves,* 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393].)

The Attorney General argues that the information secured from Harris was sufficiently corroborated to justify reliance upon it. However, none of the information independently gained—*i.e.,* (1) that defendant had a police record, (2) recently lived in a residence the address to which was found in Harris' possession and, (3) owned a late model Thunderbird which was observed parked near the apartment—tended in any way to corroborate or substantiate the informant's story that defendant was his partner in crime and in possession of narcotics and two revolvers. ▮ [See fn. 3] As in *People* v. *Cedeno,* 218 Cal.App.2d 213 [32 Cal.Rptr. 246], the evidence in the hands of the officers served merely to point a "finger of suspicion" at defendant; it did not provide reasonable cause and thus justify the warrantless arrest and search.[3]

▮ The Attorney General suggests that there was a "pressing emergency" situation presented to the officers. The emergency, it is asserted, was the fact Harris had indicated that his partner (defendant) would dispose of additional contraband—which he said was in his apartment—if he did not return by midnight that night.

But here again the officers had to rely on Harris' story to support their belief that an emergency existed. As we have indicated above, Harris was an untested informant whose word alone was not enough under the established rules of law. The officers were no more entitled to rely on Harris' statement that contraband would be destroyed by defendant, than they were entitled to rely on his statement that defendant was in possession of contraband.

In view of our conclusion that the evidence against defendant was illegally obtained, we need not discuss the issue raised by defendant that the prosecution failed to show he exercised the required dominion and control over the evidence discovered.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

---

[3]It is clear the search could not be justified as incidental to the arrest of Harris since it was neither contemporaneous in time, nor at the place of the latter's arrest. (*People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889].)