[Crim. No. 40047. Second Dist., Div. Three. June 15, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON DOMINGUEZ ENRIQUEZ, Defendant and Appellant.

**COUNSEL**

Michael S. Mink, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Donald F. Roeschke and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KLEIN, P. J.**—Aaron Dominguez Enriquez (Enriquez) entered a plea of nolo contendere to a charge of murder (Pen. Code, § 187) and admitted the use of a deadly weapon in the commission of the offense.

On appeal he contends that the trial court erred in denying his motions to suppress evidence and his motion for change of venue. We have determined that these contentions are without merit and therefore we affirm the judgment.

### PROCEDURAL AND FACTUAL BACKGROUND[1]

On March 6, 1979, Enriquez and Jeffrey Peralta committed a robbery at a pharmacy in Oxnard, during which Peralta killed Ronald Buck, Jr.

On the evening of the robbery, Detective Don Elliott interviewed Cecile Caldwell and Bridget Whitenack, two eyewitnesses. Also on March 7, two other detectives, Ken Nishihara and Larry Fryar, were canvassing the neighborhood for further information. These detectives did not know Caldwell and Whitenack had identified Peralta as a suspect when a clerk in a local store told them that a young man who turned out to be Peralta seemed to be "high" and had recently entered the store. Another clerk pointed out Peralta, who appeared to have impaired balance, dilated pupils, drooping eyelids and slurred speech, but lacked any odor of alcohol on his breath. Fryar arrested him for public intoxication. (Pen. Code, § 647, subd. (f).)

Nishihara was assisting Peralta into the police car when a man claiming to be Peralta's brother said something in Spanish. Peralta turned his head toward him and said, "That's all right. I shot that vato ['guy'] at the pharmacy in the back of the head."

Shortly after they arrived at the police station Peralta spontaneously said, "Hey, man, I've got some information for you. You know, the pharmacy? That Laubacher Pharmacy where the guy got shot? I know the name of the guy that shot him. I want a deal, man, because I'm involved. I was there, man. I didn't want to kill him."

---

[1]The facts are taken from the omnibus suppression hearing and are reviewed in the light most favorable to the judgment. (*People v. Green* (1980) 27 Cal.3d 1, 13, 55 [164 Cal.Rptr. 1, 609 P.2d 468].)

Nishihara obtained a recording device and after advising Peralta of his rights, recorded a conversation between himself, Fryar, and Peralta in a holding cell. However, during the entire conversation, Nishihara was of the opinion that the suspect was very intoxicated and at times doubted that Peralta could understand the situation.

Elliott heard by radio dispatch that Peralta was in custody and went to the station. He also recorded a conversation with the suspect, but determined that Peralta was too intoxicated to be interviewed.

Approximately seven and one-half hours later, on March 8, Elliott and Nishihara concluded a third interview with Peralta. Peralta had been given the food he requested and was sleeping. When initially awakened, he appeared groggy. As the interview progressed, he appeared more alert and answered questions more concisely. When Elliott advised him of his rights, both officers thought he was completely alert, aware of the situation, and responding intelligently to questions.

Peralta gave the officers information about the robbery which was consistent with previous statements from the eyewitnesses. Peralta discussed the kind and amount of drugs taken and mispronounced valium as "volumes," in the same way that the eyewitnesses had described one of the robbers as mispronouncing it. He said that Enriquez had stood by the pharmacy door with a knife, which corresponded with the eyewitnesses' description of the robbery.

Peralta also related that Enriquez had stolen an automobile belonging to Anthony Martinez, Peralta's cousin. Martinez had reported the theft of his vehicle from in front of Peralta's residence during the night of March 6 to the police the next morning, but named no suspect.

After the third interview with Peralta, Elliott added to the stolen vehicle teletype system a homicide warrant naming Enriquez in conjunction with the previously entered warrant on Martinez' automobile.

On March 9, 1979, Gary Tieso of the Carpenteria Police Department saw the stolen vehicle and, checking on a broadcast he had heard two days earlier, learned from the police dispatcher that the Oxnard Police Department had murder and stolen vehicle warrants on the automobile. He stopped the car and arrested the four occupants, including Enriquez, who was a passenger.

From a long and complicated procedural history, the following matters are relevant on this appeal. Enriquez entered a plea of not guilty, and moved, inter alia, to suppress physical evidence and various statements he made while in custody. The trial court denied these motions and found that Peralta's third statement was not involuntary and that the fruits thereof were admissible. The fruits included Enriquez' arrest, physical evidence and statements resulting from the arrest.

Enriquez also moved for a change of venue which was denied. He then sought extraordinary relief from that ruling. This court denied his petition for a writ of mandate.[2]

He eventually entered into a felony disposition agreement with the prosecution, withdrew his plea of not guilty, and pled nolo contendere to the murder charge.

## DISCUSSION

1. ■ *Enriquez' Motions to Suppress Were Properly Denied.*

Enriquez' contention that the trial court's denial of his Penal Code section 1538.5 motion to suppress evidence constituted error is without merit.

■ We note initially that we must review these proceedings as full hearings on the issues by the trial court acting as finder of fact: "The power to judge credibility of witnesses, resolve conflicts in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence." (*People v. Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

■ Fundamental to Enriquez' contention is his claim that his arrest was illegal because it was not supported by probable cause. The People concede that Tieso lacked probable cause because he relied solely on the felony want bulletin issued by the Oxnard police. (*People v.*

---

[2]We take judicial notice of Enriquez' petition and the procedural steps culminating in the denial of this petition in *Aaron Dominguez Enriquez v. Superior Court of the State of California for the County of Ventura (Enriquez v. Superior Court)* (Jan. 26, 1981) 2d Civil No. 60058, [unpublished opinion], rehearing denied February 26, 1981. (Evid. Code, §§ 452, subd. (d), 459.)

*Harvey* (1958) 156 Cal.App.2d 516, 521 [319 P.2d 689]; *Ojeda v. Superior Court* (1970) 12 Cal.App.3d 909, 915-916, 920 [91 Cal.Rptr. 145].) The primary question then is whether Elliott, who issued the bulletin upon which Tieso relied, had reasonable cause. ■ "[A]lthough an officer may make an arrest based on information received through 'official channels,' the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony." (*People v. Madden* (1970) 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971].)

■ As for warrantless arrests in general, the prosecution bears the burden of proving that the arresting officer, here Detective Elliott, knew facts which "'would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.'" (*People v. Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].) ■ The facts and circumstances available to Elliott at the time he entered the homicide want for Enriquez comport with this standard. (*People v. Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *People v. Hutchins* (1979) 100 Cal.App.3d 406, 412 [161 Cal.Rptr. 48].) The information was entered into the vehicle teletype system after Peralta's third statement.

Enriquez contends that Peralta's third statement cannot be relied on to provide probable cause because Peralta, a juvenile and in custody at the time of the statement, was an unreliable informant. He cites *People v. Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174], *Pollock v. Superior Court* (1969) 272 Cal.App.2d 548 [77 Cal.Rptr. 565], and earlier appellate cases for the proposition that information from an untested informant, standing alone, is insufficient to supply probable cause.[3] *Pollock* specifically addresses the question of juveniles in custody and holds that "reliance on the joint report of two untested juvenile informers, who are in custody, is unreasonable where no independent investigation is made by the police to verify their accusation." (*Pollock v. Superior Court, supra,* at pp. 554-555.)

Enriquez' reliance on these cases is misplaced for several reasons. Initially, the standard is not so much the reliability of the informant standing alone, but "'whether the officers could reasonably rely on that

---

[3]*People v. Porter* (1966) 244 Cal.App.2d 78 [52 Cal.Rptr. 862]; *People v. Amos* (1960) 181 Cal.App.2d 506 [5 Cal.Rptr. 451].

information under the circumstances.'" (*People* v. *Lara* (1967) 67 Cal.2d 365, 375 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Bigham* (1975) 49 Cal.App.3d 73, 77 [122 Cal.Rptr. 252].) ■ Information from an untested informant is sufficient if corroborated in essential respects by other facts or independent sources. The corroboration need not amount to probable cause by itself, but is sufficient if it provides the officer with reasonable grounds to believe that the informant is telling the truth. (*Ibid.*)

■ Here Elliott acquired information about the robbery from presumably reliable eyewitnesses before he heard Peralta's statement which corresponded in significant particulars to their account. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].)

In addition to the independent corroboration supplied by the witnesses' accounts, Peralta's statement was inherently reliable. Peralta named Enriquez as the second robber in the context of a confession seriously jeopardizing his own penal interest. Such statements contain "an internal guaranty of reliability" and are "of a peculiarly trustworthy nature." (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 154, fn. 7 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Hall* (1974) 42 Cal.App.3d 817, 823 [117 Cal.Rptr. 228].)

We therefore conclude that substantial evidence supports the trial court's determination that the police had reasonable cause to arrest Enriquez. (*People* v. *Superior Court (Keithley), supra,* 13 Cal.3d at p. 410.)

2. ■ *Enriquez Does Not Have Standing to Raise Alleged Violations of Peralta's Constitutional Rights.*

Enriquez also claims that his arrest was unlawful because it resulted from statements obtained in violation of Peralta's constitutional rights. The People counter that Enriquez lacks standing to challenge the voluntariness of another's statement when the involuntariness, if any, resulted from self-induced intoxication and the statement itself merely supplied reasonable cause to arrest. We agree that third party standing to suppress evidence flowing from another's confession does not extend to this situation.

Enriquez relies on *People* v. *Varnum* (1967) 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772] to support this contention, but such reliance is misplaced. In *Varnum* the court acknowledged that third parties may object to statements obtained by *coercive police tactics.* This acknowledgment however was an exception to the general holding which denied standing where the objection was based on violation of another's Fifth or Sixth Amendment rights as protected under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] or *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758].

The language in *Varnum* emphasizes that *unlawful police activity* is essential in creating a right to object to another's statement. "Unlike unreasonable searches and seizures, which always violate the Constitution, there is nothing unlawful in questioning an unwarned suspect so long as the police refrain from physically and psychologically coercive tactics condemned by due process and do not use against the suspect any evidence obtained. Accordingly, in the absence of such coercive tactics, there is no basis for excluding physical or other nonhearsay evidence acquired as a result of questioning a suspect in disregard of his Fifth and Sixth Amendment rights when such evidence is offered at the trial of another person." (Fn. omitted; *id.* at pp. 812-813.)

The appellate cases following *Varnum* which Enriquez cites allow defendants to challenge the voluntariness of another's statement only in the context of alleged unlawful police tactics. (*People* v. *Jones* (1980) 105 Cal.App.3d 572, 582 [164 Cal.Rptr. 605] [promise of leniency]; *People* v. *Gordon* (1978) 84 Cal.App.3d 913, 923-924 [149 Cal.Rptr. 91] [threats and inducements]; *People* v. *Felix* (1977) 72 Cal.App.3d 879, 885 [139 Cal.Rptr. 366] [coercion]; *People* v. *Mack* (1977) 66 Cal.App.3d 839, 857 [136 Cal.Rptr. 283] [promise of leniency].)[4]

In light of *Varnum*'s emphasis on coercive or unlawful police activity, to extend standing to defendants in Enriquez' position would be neither consistent with, nor serve, existing case law. Therefore, we hold that Enriquez does not have standing to challenge the voluntariness of Peralta's statement in the present context.[5]

---

[4]See also *People* v. *Condley* (1977) 69 Cal.App.3d 999, 1004-1005, 1015 [138 Cal.Rptr. 15] [coercion].

[5]Enriquez also seeks to suppress evidence seized in Peralta's house under a search warrant. The warrant was based in part on information from Peralta's statements to

### 3. ▮ *The Law of the Case Applies to Enriquez' Contention Concerning the Denial of His Motion for a Change of Venue.*

Enriquez finally claims that the trial court erroneously denied his motion for change of venue. His contention in the form of a petition for a writ of mandate was rejected in an unpublished opinion by this court (*Enriquez v. Superior Court, supra,* 2d Civil No. 60058). Enriquez' assertion in the present appeal thus comes within the doctrine of the law of the case. ▮ The doctrine applies in both criminal and civil matters, (*People v. Shuey* (1975) 13 Cal.3d 835, 841-842 [120 Cal.Rptr. 83, 533 P.2d 211]; *People v. Van Houten* (1980) 113 Cal.App.3d 280, 289-290 [170 Cal.Rptr. 189].) and reaches a denial by an appellate court of an application for an extraordinary writ, that is, a proceeding which is "equivalent to an intermediate appeal." (*People v. Medina* (1972) 6 Cal.3d 484, 491, fn. 7 [99 Cal.Rptr. 630, 492 P.2d 686]; *Richer v. Superior Court* (1976) 63 Cal.App.3d 748, 757 [134 Cal.Rptr. 52].)

▮ The courts do not apply the rule of the case automatically, but first determine that "the point of law involved must have been necessary to the prior decision, that the matter must have been actually presented and determined by the court, and that application of the doctrine will not result in an unjust decision." (*Pigeon Point Ranch, Inc. v. Perot* (1963) 59 Cal.2d 227, 231 [28 Cal.Rptr. 865, 379 P.2d 321].)

In *Enriquez v. Superior Court, supra,* this court held: "We are satisfied that the court below, with the assistance of able counsel and honest prospective jurors, will be able to select an impartial jury. Under the present record, we conclude there is no reasonable likelihood that Enriquez will not be accorded a fair and impartial trial in Ventura County. We so hold without prejudice to renewal of his motion for change of venue if, in fact, it becomes impossible on voir dire to select a panel of unbiased jurors." (*Id.,* at pp. 6-7.)

▮ In the current appeal, Enriquez offers no new facts or case law which could alter the basis of a reviewing court's determination of this matter.[6] The proviso concerning renewing the motion, if it became im-

---

the police and Enriquez claims that the warrant was therefore the fruit of an involuntary confession. For the reasons stated previously, he likewise lacks standing to raise this issue.

[6]Enriquez urges us to to review the venue question in light of *Martinez v. Superior Court* (1981) 29 Cal.3d 574 [174 Cal.Rptr. 701, 629 P.2d 502], decided after we is-

possible on voir dire to select a panel of unbiased jurors, does not affect our consideration, because Enriquez pled nolo contendere shortly after *Enriquez* was filed.[7] He therefore never attempted to select a panel of jurors.

We conclude that our decision in *Enriquez* v. *Superior Court, supra*, 2d Civil No. 60058 went to the merits of the issue Enriquez now raises, that the question was essential to the decision, and that the opinion decided the matter. We also conclude that in light of the record, applying the law of the case doctrine in this appeal would not result in an unjust decision. (*People* v. *Medina, supra*, 6 Cal.3d at p. 492; *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 179 [18 Cal.Rptr. 369, 367 P.2d 865].)

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.

---

sued *Enriquez* v. *Superior Court*. He contends that our Supreme Court in *Martinez* granted a writ of mandate requiring change of venue under factual circumstances very similar to ours. *Martinez*, as the present case, involved two defendants charged with murdering a witness during the course of a robbery. (*Id.*, at pp. 578-579.)

Though similar in some ways the two sets of factual circumstances also have salient differences. In *Martinez*, "[t]he net effect of the [press] coverage was to suggest to the persons who were potential jurors in the trial of the case the probability that the petitioner was the actual killer." (*Id.*, at p. 580.) In contrast, the publicity in *Enriquez* suggested that Enriquez was *not* the killer: "Much of the press dealt with routine progress of Enriquez' pre-trial procedures and the considerable problems encountered by the People in convicting *Peralta who had publicly confessed to the killing*." (Italics added; *Enriquez* v. *Superior Court, supra*, 2d Civ. No. 60058) In *Martinez*, the population size of the venue site, Placer County, was 106,500, "an important factor which ... weigh[s] toward the necessity of a change of venue." (*Martinez* v. *Superior Court, supra*, 29 Cal.3d at p. 582.) Ventura County, the venue site in the present case, has a population of approximately 500,000; "[b]eing contiguous with Santa Barbara to Los Angeles Counties, it cannot be classified as remote, isolated or xenophobic ...." (*Enriquez* v. *Superior Court, supra*, 2d Civ. No. 60058.)

In both cases, defendants were charged with capital murder. The court in *Martinez* found this to be a "primary consideration" but refused to adopt a new rule or a presumption favoring defendants in capital cases. (*Martinez* v. *Superior Court, supra*, 29 Cal.3d at pp. 582-584.) *Martinez* thus did not modify existing law.

We therefore conclude that neither the factual pattern nor the legal principles in *Martinez* compel us to reexamine de novo Enriquez' request for a change of venue.

[7] *Enriquez* v. *Superior Court, supra*, was filed January 26, 1981. Enriquez entered his plea of nolo contendere on March 5, 1981.