Filed 12/22/15  P. v. Claudio CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER GEORGE CLAUDIO II,<br><br>    Defendant and Appellant. | F070375<br><br>(Super. Ct. No. CRM032149)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini and Ronald W. Hansen, Judges.[†]

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Doris A. Calandra and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

[†]     Judge Bacciarini presided on June 19, 2014; Judge Hansen presided over all other hearings pertinent to this appeal.

## INTRODUCTION

Defendant and appellant Christopher George Claudio II pled no contest to being a felon in possession of a firearm in violation of Penal Code section 29800, subdivision (a)(1).[1] He admitted a prior conviction for robbery (§ 211) within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, and a prior prison term conviction for assault with a deadly weapon or instrument other than a firearm (§ 245, subd. (a)(1)) within the meaning of section 667.5, subdivision (b). The People dismissed a charge against defendant for being a felon in possession of ammunition (§ 30305, subd. (a)(1)) as well as a second prior conviction alleged pursuant to sections 667, subdivision (b) through (i) and 1170.12. Defendant was sentenced to five years in state prison.

Defendant argues the trial court erroneously denied his section 1538.5 motion to suppress because both his detention and patsearch were unlawful. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On February 23, 2014, Merced Police Officer Fernando Flores was on patrol. At approximately 1:28 a.m., he was driving his patrol vehicle eastbound in the parking lot of a Carl's Jr. restaurant when he saw a subject, who he later identified as defendant, run northbound in the nearby Motel 6 parking lot. Flores had been a police officer for six years, had been dispatched to that Motel 6 on prior occasions regarding vandalisms, auto burglaries, and narcotic activity, and had "been there for arrests." Flores saw defendant run, at a fast jog, in a northwest direction from the south side of the Motel 6. He then saw defendant turn north in the parking lot into a row of vehicles. The area's prior criminal activity and defendant's running caused Flores to be suspicious, so he drove to the Motel 6 parking lot.

---

[1]     All further statutory references are to the Penal Code.

While looking around for defendant, Flores heard a door open and shut. From his position in his patrol vehicle, Flores looked into the parked cars, but saw no occupants. Flores thought this too was suspicious. Flores exited his vehicle and approached one of the parked cars, a silver Impala. Using his flashlight, Flores looked into the Impala and saw five occupants. All five were slouched low in their seats to prevent being seen.

Flores saw defendant slouched down in the rear left seat of the Impala. Defendant appeared nervous and had gang-related tattoos on his body. One of defendant's tattoos consisted of four dots and was on the left side of his face. Defendant did not "make much eye contact" with the others and "looked to his left and his right."

Flores asked the driver what they were doing. She stated they were attempting to get a room, but were unable to because "the parking lot was full." They were getting ready to leave but then saw the patrol vehicle and hid because they were concerned about being pulled over. The group's desire to hide from law enforcement increased Flores's suspicion.

Flores asked for identification. No one in the car had identification. He found that suspicious; in his experience people provide false names to avoid warrants or because they are on probation or parole.

Because of defendant's apparent gang-affiliation, Flores thought he may be armed and so was concerned for his safety. Flores had contacted gang members in the past who carried weapons on their person. That information, plus the fact the group was in a high crime activity location, caused Flores to suspect there may be a weapon in the vehicle. He asked the group to exit the vehicle to get a visual of them for his safety, and to get their names for a dispatch check for warrants or holds.

Once the group exited the vehicle, Flores asked defendant if he had anything on him. Defendant responded that Flores could not search him for he was not on probation or parole. When Flores told him the gang-related tattoos caused Flores to be concerned he may have a weapon, defendant said he "was a dropout." At least three times, Flores

3.

asked defendant for permission to patsearch him. Defendant repeatedly stated he was not agreeing to be searched. Defendant again started looking to his left and to his right. Flores thought defendant was going to flee. Flores told defendant to sit down on the curb. Defendant sat with his back to the west concrete wall of the motel.

Officers Nathanial McKinnon and Edwin Arias arrived at the location to assist Flores. Flores told defendant he was not going to search him, but was going to patsearch him for officer safety, and directed him to stand up. Defendant told Flores he could not search him, stood up, turned, and attempted to jump the concrete wall. Defendant got "partially over the wall" before Flores grabbed onto one of his legs and one of his arms. The other officers went to the other side of the wall and apprehended defendant. Arias searched defendant and found a loaded handgun in his waistband.

Defendant made a motion to suppress the handgun at the preliminary hearing on April 21, 2014. Defendant asserted there was no legal basis for his detention or for the patsearch. The People agreed Flores had no knowledge at the time of detention and patsearch that defendant was on parole or probation. Defendant argued that a person jogging across a motel parking lot, the sound of a car door opening and closing, occupants of the car slouching low as if attempting to avoid being seen, and the driver's explanation they did not want to be pulled over, did not amount to reasonable suspicion defendant was engaged in criminal activity. Defendant further argued his tattoo of four dots and his refusal to consent to be searched did not support a reasonable suspicion he was armed and dangerous.

The People argued the detention occurred when Flores directed the occupants of the Impala to exit the vehicle and, at that point, based on defendant's run across the parking lot at that time of night in an area known for criminal activity, plus his subsequent hiding, supported the conclusion defendant was involved in criminal activity. They further argued defendant's gang tattoos and Flores's belief based on his training and experience that gang members carry weapons, along with the driver admitting they were

4.

all hiding because they saw Flores's patrol vehicle, coupled with defendant's nervous, evasive, then flight behavior, supported the suspicion he was armed.

On May 9, 2014, after reviewing the parties' written points and authorities, the trial court ruled:

> "The Court feels that the detention was reasonable under the circumstances of this case. It was a relatively high crime area. Motel 6 parking lot had experienced vandalism, auto burg[larie]s, and narcotic trafficking. Officer Flores made numerous arrests in the area. The defendant was walking away at a fast pace, or slight jog. He appeared to recognize a police vehicle. The officer heard a door open and close, looked for it, and found the Impala. And all five occupants were essentially hiding, which creates a strong suspicion of a reasonable suspicion that there's some criminal activity. [¶] So the Court finds the detention was reasonable, also because Flores was outnumbered five to one in the early morning hours, and five occupants in the car limited his view of their bodies. He could ask them to exit. He observed the gang tattoos on the defendant. And based on the totality of the circumstances of the five occupants slouching down, trying not to be detected, being outnumbered, the time of evening when this occurred. The high-crime area and the observation of the gang tattoos, that a pat-down for search for officer's safety was reasonable."

The trial court also issued a written order denying defendant's motion. In the written order, the court found reasonable suspicion of criminal activity warranting a detention and listed the facts supporting its conclusion: defendant was observed jogging fast across a parking lot located in an area frequented by criminal activity "such as vandalism, auto burglary, and narcotics trafficking"; defendant did so at 1:28 a.m.; Flores had made numerous arrests in the area; when Flores approached a vehicle after hearing a door open and close, he saw five occupants slouched low appearing to avoid detection; the driver told him they were slouched down to avoid being pulled over. The trial court also found Flores had a reasonable belief defendant was armed and dangerous. It acknowledged neither defendant nor the other vehicle occupants acted aggressively towards Flores, defendant said he was not on probation or parole, and defendant objected to Flores searching him, but found: Flores was outnumbered five to one in the early

5.

morning hours in a high crime area; while the occupants were in the vehicle Flores had limited view of their hands and body; the occupants slouching down raised safety concerns for the officer; Flores saw gang tattoos on defendant and knew gang members sometimes carried weapons on their person; after the occupants were out of the vehicle and standing next to the parking lot wall and two officers responded to assist, Flores told defendant he was going to search him and defendant fled.

On June 19, 2014, defendant filed a motion in the trial court to renew his motion to suppress pursuant to section 1538.5, subdivision (i). He, again, challenged his detention and patsearch arguing no reasonable suspicion to detain and "no indication … he was presently armed or dangerous." The trial court reviewed the preliminary hearing transcript. Defendant conceded there was not much dispute about the facts of the case. The court found "based on the totality of the circumstances, the officer's actions were reasonable within the meaning of the Fourth Amendment" and denied the motion.

On July 18, 2014, defendant filed a petition for writ of mandate in this court challenging his detention and patsearch. (*Claudio v. Superior Court* (F069730).)

On July 29, 2014, defendant's writ of mandate was denied.

Defendant filed this appeal challenging the trial court's denial of his motion to suppress.

**DISCUSSION**

Defendant asserts his detention and patsearch violated the Fourth Amendment of the United States Constitution. He argues he was detained when Flores ordered the occupants out of the Impala and, at that point, no articulable facts provided reasonable suspicion he had engaged in criminal activity. He additionally argues no circumstances known to Flores warranted a belief he was armed and dangerous or that Flores's safety, or the safety of others, was in danger. He points out that he told Flores he was a criminal street gang drop out. He asserts the single factor of his having tattoos, or of his being a member of a criminal street gang, or of his being in a high crime area, or of his avoiding

6.

eye contact, did not justify his detention or patsearch.[2] Defendant contends there was an innocent interpretation of his jog across the Motel 6 parking lot: that such behavior is consistent with the Impala driver's explanation they were trying to rent a motel room and defendant checking at the motel office to do so.

The Attorney General does not contest defendant was detained. Instead, she contends defendant's argument, that he was unlawfully detained, is based on a selective view of the circumstances. She points out: defendant was seen running in a high crime area at 1:28 a.m., then hiding in a car with four others; the driver of the car told Flores they hid after they saw the patrol car and did so to avoid being pulled over; none of the car's occupants had identification; defendant acted nervous and, when told the officer would commence a patdown search, attempted to flee. These additional facts, the Attorney General asserts, justify both the detention and the patsearch.

## 1.    Standard of Review.

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) "In reviewing the trial court's suppression ruling, we defer to its factual findings if supported by substantial evidence. We independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment." (*People v. Brown* (2015) 61 Cal.4th 968, 975.)

---

[2]    For the first time on appeal, defendant asserts that, even if his initial detention was reasonable, his prolonged detention "based upon his refusal to permit a pat down search" was unreasonable. He provides no further argument or citation to authority, so we will not address this issue. (*People v. Hardy* (1992) 2 Cal.4th 86, 150.) Defendant also did not elicit any evidence in the trial court of the duration of the detention. "[F]or a suppression ruling to be reviewable, the underlying objection, contention or theory must have been urged and determined in the trial court." (*People v. Manning* (1973) 33 Cal.App.3d 586, 600.)

The trial court's factual findings are not in dispute.  Thus, we independently apply the requisite legal standard to the facts presented to determine whether the detention and patsearch were reasonable under the Fourth Amendment.

**2.      Detention.**

The Fourth Amendment allows brief investigative stops supported by reasonable suspicion of criminal activity.  (*United States v. Arvizu* (2002) 534 U.S. 266, 273 (*Arvizu*); *Terry v. Ohio* (1968) 392 U.S. 1, 21-22 (*Terry*).)  "'"'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." [Citation.]'"  (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.)  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'  [Citations.]"  (*Arivizu*, *supra*, 534 U.S. at p. 273; accord, *People v. Letner and Tobin*, *supra*, 50 Cal.4th at pp. 145-146; *People v. Hernandez* (2008) 45 Cal.4th 295, 299.)  The suspicion may not be based on "mere curiosity, rumor, or hunch" (*In re Tony C.* (1978) 21 Cal.3d 888, 893), but the likelihood of criminal activity need not rise to the level required for probable cause, or even preponderance of the evidence.  (*United States v. Sokolow* (1989) 490 U.S. 1, 7.)  Defendant argues particular individual facts do not support his detention or his patsearch.  The lawfulness of a detention, however, depends not on any one circumstance viewed in isolation, but upon the totality of the circumstances known to the detaining officer.  (*People v. Souza* (1994) 9 Cal.4th 224, 227 (*Souza*).)

An individual's presence in an area of expected criminal activity, standing alone, is not enough to support reasonable, particularized suspicion that the individual is committing a crime, but it is an appropriate consideration.  Officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances

8.

warrant further investigation. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124; *Souza*, *supra*, 9 Cal.4th at p. 240.) The time of night and darkness are also pertinent factors. (*Crofoot v. Superior Court* (1981) 121 Cal.App.3d 717, 724; *People v. Rosenfeld* (1971) 16 Cal.App.3d 619, 622.) The location here had, on prior occasions, been the site of criminal activity: vandalisms, auto burglaries, and narcotic activity. Flores had made prior arrests there. Additionally, it was 1:28 a.m. and, presumably, dark. Defendant was seen jogging across the parking lot to the area of parked cars. Flores drove his patrol vehicle toward defendant's location, but lost sight of him. When he heard a door open and shut, Flores looked toward a parked Impala. He saw no occupants.

When Flores exited his patrol vehicle and approached the Impala using his flashlight to see inside, he saw five occupants, all slouched down so as not to be seen. Such behavior is suspicious. (*Souza*, *supra*, 9 Cal.4th at p. 241 [car occupant's immediately bending down when officer directs patrol car's spotlight toward their car considered an evasive action relevant to suspicion that criminal activity is occurring].) Defendant was in the back seat of the Impala acting nervous, not making eye contact, and looking left and right. (*Illinois v. Wardlow*, *supra*, 528 U.S. at p. 124 [nervous, evasive behavior is a pertinent factor in determining reasonable suspicion].) The driver told Flores they were hiding from him. No occupant of the vehicle had identification. (*People v. Daugherty* (1996) 50 Cal.App.4th 275, 288 [carrying no identification while making long trip a fact considered in reasonable suspicion determination].)

It was objectively reasonable to suspect defendant, nervously attempting to hide from law enforcement after running through a high crime area in the middle of the night, may have been involved in criminal activity. As such, the circumstances "permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.'" (*In re Tony C.*, *supra*, 21 Cal.3d at p. 894.)

That, as defendant argues, there was an innocent interpretation of his jog across the parking lot, does not alter this conclusion. "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" (*In re Tony C.*, *supra*, 21 Cal.3d at p. 894.; see *Arvizu*, *supra*, 534 U.S. at p. 274 [a "divide-and-conquer analysis" of finding individual factors susceptible to an innocent explanation precluded by *Terry*]; *United States v. Sokolow*, *supra*, 490 U.S. at p. 9 [factors that, by themselves were consistent with innocent travel, collectively gave rise to reasonable suspicion]; see also *People v. Glaser*, *supra*, 11 Cal.4th at p. 373 ["[T]hat a person's conduct is consistent with innocent behavior does not necessarily defeat the existence of reasonable cause to detain. [Citation.] What is required is not the *absence* of innocent explanation, but the *existence* of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"].)

Here, the totality of the circumstances objectively support a reasonable suspicion defendant may have been involved in criminal activity. We, therefore, uphold the temporary detention at issue as lawful.

**3.     Patsearch.**

To conduct a limited search of an individual's outer clothing for weapons, an officer need not be absolutely certain the individual is armed; "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.) In determining whether the officer "acted reasonably in such circumstances, due weight must be given … to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." (*Ibid.*) "The *Terry* test does not look to the individual details in its

10.

search for a reasonable belief that one's safety is in danger; rather it looks to the 'totality of the circumstances.' [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1074.)

Defendant argues the decision to patsearch him was based solely on the tattoo on his face and on his refusal to allow Flores to search him, and that gang affiliation alone does not "'support a reasonable, particularized suspicion.'"

First, defendant's denial of consent to search was neither offered by the People nor considered by the trial court on the issue of reasonable suspicion. Second, defendant's facial tattoo was not the only relevant factor. Flores had six years of experience as a police officer. He had investigated crimes committed in the area and had made arrests there. He had prior contact with gang members who carried weapons on their persons. He saw defendant running through an area of prior criminal activity at 1:28 a.m., and observed him to then hide in a parked car. When contacted, defendant acted nervous and avoided eye contact with the other occupants of the car. He continually looked to his left and to his right. Flores saw gang tattoos on defendant and, when he asked defendant about them, defendant did not deny ever being a gang member but, instead, claimed to be a drop out. (*In re H.M.* (2008) 167 Cal.App.4th 136, 146-147 [it is common knowledge members of criminal street gangs often carry guns and other weapons; although this factor alone may not justify a weapon search, combined with additional factors it may].) Once defendant was out of the vehicle, Flores made it clear to defendant, by asking him if he had anything on him and by telling him of his concern defendant may have a weapon, that Flores wanted to search him. Defendant again started looking to his left and to his right. When Flores told defendant he was going to conduct the search, defendant attempted to flee over the concrete wall. His flight was stopped by two officers who were on the other side.[3]

---

[3] The Attorney General points out that defendant's flight from Flores occurred prior to being searched. By the time of the search, the argument goes, "the officer had probable cause to arrest [defendant] for resisting lawful detention by fleeing." (See

Defendant points out Flores did not search, or attempt to search, any other occupant of the vehicle. He argues Flores's safety issues were therefore not "due to the numbers." We are not persuaded. That Flores did not attempt to patsearch any other occupant of the vehicle shows instead that he was not randomly patsearching individuals for whatever evidence of criminal activity he might find. He confined his search strictly to the individual, defendant, who had engaged in behavior suggesting he was armed and dangerous.

We conclude the facts and circumstances Flores detailed before the trial judge would warrant a reasonably prudent person to believe defendant was armed and, as such, presented a threat to officer safety while that officer investigated defendant's suspicious behavior. Defendant's motion to suppress the discovery of the loaded handgun in his waistband was properly denied.

---

*People v. Quiroga* (1993) 16 Cal.App.4th 961, 967 [fleeing from a proper investigatory detention generally constitutes a violation of § 148]; see also *People v. Lloyd* (1989) 216 Cal.App.3d 1425, 1429 ["A suspect has no right to resist a lawful detention."]; *People v. Superior Court* (*Bowden*) (1976) 65 Cal.App.3d 511, 523 [same].) Thus, any search of defendant at that point was justified as a search incident to arrest. (See *Chimel v. California* (1969) 395 U.S. 752, 762-763; see also *People v. Allen* (1980) 109 Cal.App.3d 981, 985-986 [adequate grounds to temporarily detain, coupled with individual being aware of officer's desire to detain, creates duty in individual to permit himself to be detained; refusal to do so violates § 148].)

The Attorney General's argument, however, presupposes reasonable belief defendant was armed. If defendant's flight was the result of, or caused by, a stated intention to perform an illegal patsearch, the resulting evidence may not necessarily be protected from exclusion. (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1262 [evidence may be excluded as "'fruit of the poisonous tree'" where discovery results from, or caused by, Fourth Amendment violation; exclusion not required where "'fruit'" derived from source independent of "'poisonous'" conduct or where connection between the lawless conduct of the police and the discovery of the challenged evidence is "'"'so attenuated as to dissipate the taint'"'"]; *People v. McGriff* (1990) 217 Cal.App.3d 1140, 1144 [flight at the approach of police, not triggered by illegal act on the part of police, relevant to determination of reasonable suspicion].) The Attorney General's argument need not be addressed, however, as we find the patsearch to be lawful.

## DISPOSITION

The judgment is affirmed.